**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIKEN REGIONAL MEDICAL CENTERS, LLC, dba Aiken Regional Medical Centers 302 University Parkway Aiken, SC  29801, | |
| AUBURN REGIONAL MEDICAL CENTER, INC., dba Auburn Regional Medical Center 202 N Division Street Auburn, WA 98001, | |
| DISTRICT HOSPITAL PARTNERS, LP, dba George Washington University Hospital 900 23rd Street NW Washington, DC  20037, | |
| LANCASTER HOSPITAL CORPORATION, dba Palmdale Regional Medical Center 38600 Medical Center Drive Palmdale, CA  93551, | |
| LAREDO REGIONAL MEDICAL CENTER, LP, dba Doctor's Hospital of Laredo 10700 McPherson Road Laredo, TX  78045, | Case No. |
| MANATEE MEMORIAL HOSPITAL, LP, dba Manatee Memorial Hospital 206 Second Street East Bradenton, FL  34208, | |
| MCALLEN HOSPITALS, LP, dba South Texas Health System 1102 W. Trenton Road Edinburg, TX  78539, | |
| MCALLEN HOSPITALS, LP, dba McAllen Medical Heart Hospital 1900 South D Street McAllen, TX 78503, | |
| NORTHWEST TEXAS HEALTHCARE SYSTEM, INC., dba Northwest Texas Healthcare System | |

1501 S. Coulter Street
Amarillo, TX  79106,

SPARKS FAMILY HOSPITAL, INC., dba
Northern Nevada Medical Center
2375 E. Prater Way
Sparks, NV  89434,

ST. MARY'S REGIONAL MEDICAL
CENTER
305 South 5th Street
Enid, OK 73701

SUMMERLIN HOSPITAL MEDICAL
CENTER, LLC, dba Summerlin Hospital
Medical Center
657 N. Town Center Drive
Las Vegas, NV  89144,

UHS OF TEXOMA, INC., dba Texoma
Medical Center
5016 S. US Highway 75
Denison, TX  75020,

UHS-CORONA, INC., dba Corona Regional
Medical Center
800 S. Main Street
Corona, CA  92882,

UNIVERSAL HEALTH SERVICES OF
RANCHO SPRINGS, INC., dba Southwest
Healthcare System
25500 Medical Center Drive
Murrieta, CA  92562,

VALLEY HEALTH SYSTEM, LLC, dba
Valley Hospital Medical Center
620 Shadow Lane
Las Vegas, NV  89106,

VALLEY HEALTH SYSTEM, LLC, dba
Desert Springs Hospital
2075 E. Flamingo Road
Las Vegas, NV  89119,

VALLEY HEALTH SYSTEM, LLC, dba

5946164.6

Spring Valley Hospital Medical Center
5400 S. Rainbow Boulevard
Las Vegas, NV  89118,

VALLEY HEALTH SYSTEM, LLC, dba
Centennial Hills Hospital Medical Center
6900 N. Durango Drive
Las Vegas, NV  89149,

WELLINGTON REGIONAL MEDICAL
CENTER, LLC, dba Wellington Regional
Medical Center
10101 Forest Hill Boulevard
West Palm Beach, FL  33414,

EMORY UNIVERSITY, dba Emory
University Hospital
1364 Clifton Road, NE
Atlanta, GA 30322,

EMORY UNIVERSITY, dba Emory
University Hospital Midtown
550 Peachtree Street, NE
Atlanta, GA 30308,

FRESNO COMMUNITY HOSPITAL AND
MEDICAL CENTER, dba Community
Regional Medical Center
2823 Fresno Street
Fresno, CA 93721,

FRESNO COMMUNITY HOSPITAL AND
MEDICAL CENTER, dba Clovis Community
Medical Center
2755 Herndon Avenue
Clovis, CA 93611,

INTEGRIS SOUTHWEST MEDICAL
CENTER
4401 S Western
Oklahoma City, OK 73109,

INTEGRIS BASS BAPTIST HEALTH
CENTER
600 S. Monroe
Enid, OK 73701,

5946164.6

INTEGRIS BAPTIST MEDICAL CENTER
3300 NW Expressway
Oklahoma City, OK 73112,

ALTA LOS ANGELES HOSPITALS, INC.,
dba Los Angeles Community Hospital
4081 East Olympic Blvd.
Los Angeles, CA 90023-3330,

SOUTHERN CALIFORNIA HEALTHCARE
SYSTEM, INC., dba Southern California
Hospital at Culver City
f/k/a Brotman Medical Center
3828 Delmas Terrace
Culver City, CA 90232,

NIX HOSPITALS SYSTEM, LLC, dba Nix
Health Care System
414 Navarro Street
San Antonio, TX 78205,

CABELL HUNTINGTON HOSPITAL, INC.,
dba Cabell Huntington Hospital,
1340 Hal Greer Blvd.
Huntington, WV 25701,

COOKEVILLE REGIONAL MEDICAL
CENTER AUTHORITY, dba Cookeville
Regional Medical Center,
1 Medical Center Boulevard
Cookeville, TN 38501,

FAUQUIER MEDICAL CENTER, LLC, dba
Fauquier Hospital,
500 Hospital Drive
Warrenton, VA 20186,

KAWEAH DELTA HEALTH CARE
DISTRICT, dba Kaweah Delta Medical Center
400 W. Mineral King Avenue
Visalia, CA 93291,

MAURY REGIONAL HOSPITAL, dba
Maury Regional Medical Center,
1224 Trotwood Ave

4

Columbia, TN 38401,

MAURY REGIONAL HOSPITAL, dba
Wayne Medical Center
103 JV Mangubat Dr
Waynesboro, TN 38485,

MISSISSIPPI BAPTIST MEDICAL
CENTER, INC., dba Mississippi Baptist
Medical Center
1225 North State Street
Jackson, MC 39202,

NICHOLAS H. NOYES MEMORIAL
HOSPITAL, INC., dba Nicholas H. Noyes
Memorial Hospital
111 Clara Barton Street
Dansville, NY 14437,

POMONA VALLEY HOSPITAL MEDICAL
CENTER
1798 North Garey Avenue
Pomona, CA 91767,

REDLANDS COMMUNITY HOSPITAL
350 Terracina Blvd.
Redlands, CA 92373,

ROBERT WOOD JOHNSON UNIVERSITY
HOSPITAL, INC., dba Robert Wood Johnson
University Hospital
1 Robert Wood Johnson Place
New Brunswick, NJ 08901,

SAN ANTONIO REGIONAL HOSPITAL,
fka San Antonio Community Hospital
999 San Bernadino Road
Upland, CA 91786,

SLIDELL MEMORIAL HOSPITAL, dba St.
Tammany Parish Hospital Service District #2
1001 Gause Boulevard
Slidell, LA 70458,

ST. JOSEPH'S UNIVERSITY MEDICAL
CENTER, fka St. Joseph's Regional Medical
Center

5

703 Main Street
Paterson, NJ 07503,

THE COOPER HEALTH SYSTEM, dba
Cooper University Hospital
1 Cooper Plaza
Camden, NJ 08103-1461,

TRINITAS REGIONAL MEDICAL CENTER
222 Williamson Street
Elizabeth, NJ 07207,

TRI-CITY HEALTHCARE DISTRICT, dba
Tri-City Medical Center
4002 Vista Way
Oceanside, CA 92056,

WYCKOFF HEIGHTS MEDICAL CENTER
374 Stockholm Street
Brooklyn, NY 11237,

                            Plaintiffs,

        v.

ALEX M. AZAR II, Secretary,
United States Department of Health and
Human Services
200 Independence Avenue, S.W.
Washington, D.C.  20201,

                            Defendant.

## **COMPLAINT**

The above-captioned 48 Plaintiff-hospitals (collectively, "the Hospitals"), by and through their undersigned attorneys, bring this action against defendant Alex M. Azar II, in his official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

5946164.6

## INTRODUCTION

1.      The issue in this action is how inpatient hospital days should be counted for Medicare disproportionate share hospital ("DSH") payment purposes when the patient was eligible for Medicare, and enrolled in a Medicare Part C plan (as opposed to participating in fee-for-service Medicare – "Part A"), during the inpatient stay.  In *Allina Health Services v. Sebelius ("Allina I")*, 746 F.3d 1102 (D.C. Cir. 2014), the D.C. Circuit addressed whether Medicare Part C plan enrollees "are 'entitled to benefits' under Part A, such that they should be counted in the [Medicare/SSI] fraction, or whether, if not regarded as 'entitled to benefits under Part A,' the dual Medicare and Medicaid "eligible" Part C enrollees' days should instead be included in the Medicaid fraction" (as explained in detail below, the "Medicare/SSI" and "Medicaid" fractions are used to determine the amount of a hospital's Medicare DSH payment).  *Id. at* 1105.  The D.C. Circuit (a) affirmed this Court's *vacatur* of the Secretary's 2004 rule that required the "Part C days" to be included in the Medicare/SSI fraction and excluded from the Medicaid fraction and (b) remanded the matter to the agency to decide how to proceed in light of the *vacatur*.

2.      On remand, the Secretary again sought to justify his policy of including Part C days in the Medicare/SSI fraction and excluding them from the Medicaid fraction.  The *Allina I* plaintiffs challenged application of the post-remand, reissued policy.  In *Allina Health Services v. Price ("Allina II")*, 863 F.3d 937 (D.C. Cir. 2017), *aff'd*, 139 S. Ct. 1804 (2019), the D.C. Circuit reiterated that the 2004 rule was invalid, stating "HHS violated the Medicare Act when it changed its reimbursement adjustment formula without providing notice and opportunity for comment."  *Id.* at 938.  Significantly, the D.C. Circuit also suggested that the Secretary could not "repair" the deficiencies in the 2004 <u>rulemaking</u> process by implementing the new policy through an <u>adjudicatory</u> process, stating, contrary to the earlier decision in *Allina I,* that the Secretary "could not circumvent this requirement [to conduct notice and comment rulemaking]

by claiming that it was acting by way of adjudication rather than rulemaking." *Id.* at 945.  The Supreme Court affirmed the D.C. Circuit's decision.  *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019).  On remand from the Supreme Court, this Court entered judgment in favor of the plaintiffs, vacated the Medicare/SSI fractions to be used in calculating the plaintiffs' DSH payments, and remanded the case to HHS for further proceedings consistent with the law established by the *Allina* case.  *See* Order, *Allina Health Servs. v. Azar*, No. 14-cv-1415 (TJK) (D.D.C. Sept. 4, 2019), ECF No. 58 at 2.

3.      Based on the decisions of the D.C. Circuit in *Allina I* and *Allina II* and the Supreme Court's affirmance of the D.C. Circuit's decision in *Allina II*, the Hospitals seek an order (a) declaring invalid and enjoining the Secretary from treating inpatient days for Part C plan enrollee patients as Part A days for Medicare DSH payment purposes for periods prior to October 1, 2013, and (b) directing the Secretary to recalculate the Hospitals' Medicare DSH payments for the fiscal periods at issue herein consistent with that order and make prompt payment of any additional amounts due, plus interest calculated under 42 U.S.C. §1395oo(f)(2) and/or 42 U.S.C. §1395g(d).

## STATEMENT OF THE CASE

4.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the "Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.*  The Hospitals herein challenge their Medicare DSH payments only for Federal Fiscal Years ("FFYs") before FFY 2014, which began on October 1, 2013, on the grounds that these payments were understated because they were calculated using (a) Medicare/SSI fractions that improperly included inpatient hospital days attributable to Medicare Part C plan enrollee patients and (b) Medicaid fractions that improperly excluded from their numerator inpatient hospital days

attributable to dually-eligible Medicare Part C enrollee patients (*i.e.*, Medicare Part C enrollees who are also eligible for Medicaid).

5.    Medicare DSH payments are calculated based, in part, on the Medicare/SSI fraction.   Under 42 U.S.C. §1395ww(d)(5)(F)(vi)(I), hospital inpatients who are "entitled to benefits under [Medicare] Part A" are to be included in the Medicare/SSI fraction, with all such patients in the denominator and those who are also entitled to Supplemental Security Income ("SSI") benefits in the numerator.   Patients enrolled in a Medicare Part C plan may be "eligible" for Part A, but are not "entitled" to Part A benefits during the months when they have given up their Part A entitlement to enroll in a Part C plan.   Accordingly, inpatient days for these patients should not be in the Medicare/SSI fraction.

6.    Medicare DSH payments are also calculated based, in part, on the Medicaid fraction.   Under 42 U.S.C. §1395ww(d)(5)(F)(vi)(II), the numerator of the Medicaid fraction "is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this title, and the denominator of which is the total number of the hospital's patient days for such period."   Patients enrolled in a Medicare Part C plan may be "eligible" for Part A, but are not "entitled" to Part A benefits during the months when they have given up their Part A entitlement to enroll in a Part C plan.   Accordingly, inpatient days for dually-eligible Medicare Part C enrollee patients should be included in the numerator of the Medicaid fraction.

7.    The policy of the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for implementing the Medicare program, has been inconsistent regarding treatment for DSH purposes of days relating to inpatients who were

Medicare Part C enrollees during their inpatient hospital stay ("Part C days").  In 2003, CMS "propos[ed] to clarify" that Part C days "should not be included in the [Medicare/SSI] fraction." 68 Fed. Reg. 27,154, 27,208 (May 19, 2003).  CMS also proposed to permit hospitals to count Medicaid-eligible Part C days in the numerator of the Medicaid fraction. *Id*. This proposal, however, was not finalized that year (*see* 68 Fed. Reg. 45,346, 45,422 (August 1, 2003)) or subsequently.

8.      In a 2004 rulemaking, CMS reversed course and "adopt[ed] a policy" to include Part C days in the Medicare/SSI fraction, and exclude these days from the numerator of the Medicaid fraction for Medicaid-eligible Part C plan enrollees, and stated that it was "revising" its regulations to reflect this policy.  69 Fed. Reg. 48,916, 49,099 (August 11, 2004).  However, CMS did not revise the DSH regulation at that time.

9.      In a 2007 rulemaking, the agency stated that it had "inadvertently" failed to revise the DSH regulation in 2004 and was instead doing so at that time, but did not follow the notice-and- comment provisions of the APA to complete to the purported 2004 "policy change" so that it could be effective on October 1, 2007.  72 Fed. Reg. 47,130, 47,384 (August 22, 2007).

10.     In a 2013 rulemaking, CMS claimed that it was "readopt[ing]" the 2004 policy. 78 Fed. Reg. 50,496, 50,614 (August 19, 2013).  The agency's 2013 assertion lacks a factual foundation because neither the changes that CMS made to the DSH policy in the preambulatory text in 2004, nor the codified revisions to the regulatory text in 2007, had been "adopted" using notice and comment rulemaking.

11.     In *Allina I,* when reviewing DSH payments from 2007, the D.C. Circuit ruled that the 2004 policy was not a "logical outgrowth" of the 2003 proposed rule, and therefore, CMS did not provide adequate notice of the new 2004 interpretation, invalidating it under the APA and

Medicare Act.  *Id*. at 1107–09.  The D.C. Circuit made a similar finding *Allina II* when reviewing DSH payments from 2012.  The effect of these decisions was to reinstate the policy that was in effect prior to the 2004 change, which was to exclude Part C days from the Medicare/SSI fraction.

12.    The holdings in those decisions also apply to the Hospitals, which seek to have their pre-FFY 2014 DSH payments recalculated with (a) all Part C days <u>excluded</u> from the Medicare/SSI fractions and (b) Medicaid-eligible Part C days <u>included</u> in the numerator of the Hospitals' Medicaid fractions, because the Hospitals' existing payments violate the Medicare DSH statute, are arbitrary and capricious, and are otherwise contrary to law.

## <u>JURISDICTION AND VENUE</u>

13.    This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §§1331 (federal question) and 1361 (mandamus).

14.    Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

## <u>PARTIES</u>

15.    At all times relevant to this action, the Hospitals were qualified as Medicare-participating, general acute-care hospital-providers under the federal Medicare program pursuant to the Medicare Act.  The Plaintiff-Hospitals in this action are listed below with their unique Medicare provider numbers and their cost reporting periods at issue in this action, as set forth in their administrative appeals:

a.    Aiken Regional Medical Centers, LLC, dba Aiken Regional Medical Centers, Medicare Provider Number 42-0082, for hospital fiscal years 2007, 2008, 2009, and 2010.

b.    Auburn Regional Medical Center, Inc., dba Auburn Regional Medical Center, Medicare Provider Number 50-0015, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2011.

11

c.      District Hospital Partners, L.P., dba George Washington University Hospital, Medicare Provider Number 09-0001, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2011.

d.      Lancaster Hospital Corporation, dba Palmdale Regional Medical Center, Medicare Provider Number 05-0204, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

e.      Laredo Regional Medical Center, LP, dba Doctor's Hospital of Laredo, Medicare Provider Number 45-0643, for hospital fiscal years 2007, 2008, 2009, and 2011.

f.      Manatee Memorial Hospital, LP, dba Manatee Memorial Hospital, Medicare Provider Number 10-0035, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

g.      McAllen Hospitals, LP, dba South Texas Health System, Medicare Provider Number 45-0119, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2011.

h.      McAllen Hospitals, LP, dba McAllen Medical Heart Hospital, Medicare Provider Number 45-0811, for hospital fiscal years 2006 and 2007.

i.      Northwest Texas Healthcare System, Inc., dba Northwest Texas Healthcare System, Medicare Provider Number 45-0209, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

j.      Sparks Family Hospital, Inc., dba Northern Nevada Medical Center, Medicare Provider Number 29-0032, for hospital fiscal year 2009.

k.      St. Mary's Regional Medical Center, Medicare Provider Number 37-0026, for hospital fiscal year 2009.

l.      Summerlin Hospital Medical Center, LLC, dba Summerlin Hospital Medical Center, Medicare Provider Number 29-0041, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2011.

m.      UHS of Texoma, Inc., dba Texoma Medical Center, Medicare Provider Number 45-0324, for hospital fiscal years 2008 and 2010.

n.      UHS-Corona, Inc., dba Corona Regional Medical Center, Medicare Provider Number 05-0329, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

o.      Universal Health Services of Rancho Springs, Inc., dba Southwest Healthcare System, Medicare Provider Number 05-0701, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

p.      Valley Health System, LLC, dba Valley Hospital Medical Center, Medicare Provider Number 29-0021, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

q.      Valley Health System, LLC, dba Desert Springs Hospital, Medicare Provider

Number 29-0022, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

r.      Valley Health System, LLC, dba Spring Valley Hospital Medical Center, Medicare Provider Number 29-0046, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2011.

s.      Valley Health System, LLC, dba Centennial Hills Hospital Medical Center, Medicare Provider Number 29-0054, for hospital fiscal years 2010 and 2011.

t.      Wellington Regional Medical Center, LLC, dba Wellington Regional Medical Center, Medicare Provider Number 10-0275, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

u.      Emory University, d/b/a Emory University Hospital, Medicare Provider Number 11-0010, for hospital fiscal years 2007, 2008, 2009, 2010, 2011, and 2012.

v.      Emory University, d/b/a Emory University Hospital Midtown, Medicare Provider Number 11-0078, for hospital fiscal years 2007, 2008, 2009, 2010, 2011, and 2012.

w.      Fresno Community Hospital and Medical Center, d/b/a Community Regional Medical Center, Medicare Provider Number 05-0060, for hospital fiscal years 2008, 2009, 2010, 2011, 2012, and 2013.

x.      Fresno Community Hospital and Medical Center, d/b/a Clovis Community Medical Center, Medicare Provider Number 05-0492, for hospital fiscal years 2008, 2009, 2010, 2011, 2012, and 2013.

y.      Integris Southwest Medical Center, Medicare Provider Number 37-0106, for hospital fiscal years 2007, 2008, and 2009.

z.      Integris Bass Baptist Health Center, Medicare Provider Number 37-0016, for hospital fiscal years 2007, 2008, and 2009.

aa.     Integris Baptist Medical Center, Medicare Provider Number 37-0028, for hospital fiscal years 2007, 2008, and 2009.

bb.     Alta Los Angeles Hospitals, Inc., dba Los Angeles Community Hospital, Medicare Provider Number 05-0663, for hospital fiscal year 2008.

cc.     Southern California Health Care System, Inc., d/b/a Southern California Hospital at Culver City, f/k/a Brotman Medical Center, former Medicare Provider Number 05-0752, for hospital fiscal years 2007, 2008, 2009, 2010, 2011 and 2012. The current Medicare Provider number for this hospital is 05-0135.

dd.     Nix Hospitals System, LLC, d/b/a Nix Health Care System, Medicare Provider Number 45-0130, for hospital fiscal years 2009, 2010, and 2011.

ee.     Cabell Huntington Hospital, Inc., dba Cabell Huntington Hospital, Medicare

13

Provider Number 51-0055, for hospital fiscal year 2009.

ff.     Cookeville Regional Medical Center Authority, dba Cookeville Regional Medical Center, Medicare Provider Number 44-0059, for hospital fiscal years 2008, 2009, and 2010.

gg.     Fauquier Medical Center, LLC, dba Fauquier Hospital, Medicare Provider Number 49-0023, for hospital fiscal year 2009.

hh.     Kaweah Delta Health Care District, dba Kaweah Delta Medical Center, Medicare Provider Number 05-0057, for hospital fiscal year 2009.

ii.     Maury Regional Hospital, dba Maury Regional Medical Center, Medicare Provider Number 44-0073, for hospital fiscal years 2008, 2010, 2011, and 2012.

jj.     Maury Regional Hospital, dba Wayne Medical Center, Medicare Provider Number 44-0010, for hospital fiscal year 2008 and 2010.

kk.     Mississippi Baptist Medical Center, Inc., dba Mississippi Baptist Medical  Center, Medicare Provider Number 25-0102, for hospital fiscal years 2007, 2008, 2009, 2010, and 2011.

ll.     Nicholas H. Noyes Memorial Hospital, Inc., dba Nicholas H. Noyes Memorial Hospital, Medicare Provider Number 33-0238, for hospital fiscal years 2007, 2008, and 2009.

mm.     Pomona Valley Hospital Medical Center, aka Pomona Valley Hospital, Medicare Provider Number 05-0231, for hospital fiscal years 2006, 2007, 2008, 2009, 2011, and 2012.

nn.     Redlands Community Hospital, Medicare Provider Number 05-0272, for  hospital fiscal year 2009.

oo.     Robert Wood Johnson University Hospital, Inc., dba Robert Wood Johnson University Hospital, Medicare Provider Number 31-0038, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2012.

pp.     San Antonio Regional Hospital, fka San Antonio Community Hospital, Medicare Provider Number 05-0099, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, and 2011.

qq.     Slidell Memorial Hospital, dba St. Tammany Parish Hospital Service District #2, Medicare Provider Number 19-0040, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, 2011, and 2012.

rr.     St. Joseph's Hospital and Medical Center, dba St. Joseph's Regional Medical Center, Medicare Provider Number 31-0019, for hospital fiscal years 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2013 (for the period of January 1, 2013 through September

14

30, 2013, only).

ss.     The Cooper Health System, dba Cooper University Hospital, Medicare Provider Number 31-0014, for hospital fiscal years 2006, 2007, 2008, 2009, 2011, and 2012.

tt.     Trinitas Regional Medical Center, Medicare Provider Number 31-0027, for hospital fiscal years 2006, 2007, 2008, and 2009.

uu.     Tri-City Healthcare District, dba Tri-City Medical Center, Medicare Provider Number 05-0128, for hospital fiscal years 2009, 2010 and 2011.

vv.     Wyckoff Heights Medical Center, Medicare Provider Number 33-0221[1], for hospital fiscal years 2007, 2008, and 2009.

16.     Defendant Alex M. Azar II is the Secretary of HHS.  The Secretary, the federal official responsible for administration of the Medicare program, has delegated that responsibility to CMS.  Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA").  In this complaint, the Hospitals refer to the agency as CMS.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

17.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. §1395c.  The Medicare program is federally funded and administered by the Secretary through the CMS and its contractors.  42 U.S.C. §1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

18.     CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. §401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretative rules implementing the Medicare program, which are compiled in one or more CMS Manuals.  The Secretary also issues other subregulatory documents to implement the

---

[1] The Medicare Provider Number for this hospital was listed incorrectly as 33-0112 on the Schedules of Providers in two appeals: HLB Independent 2008 DSH Medicaid Dual Eligible Part C Days (PRRB Case No. 13-2747G) and HLB Independent 2009 DSH Medicaid Dual Eligible Part C Days (PRRB Case No. 14-3369G). The correct provider number for Wyckoff Heights Medical Center is 33-0221, as listed in the Parties section above.

Medicare program, which generally do not have the force and effect of law. The Medicare Act, at 42 U.S.C. §1395hh(a), prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service unless it is promulgated by the Secretary by notice-and-comment rulemaking. In addition, the Medicare Act specifies that where a final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . ., such provision shall be treated as a proposed regulation and shall not take effect." 42 U.S.C. §1395hh(a)(4).

19.     The Medicare program is divided into five parts: A, B, C, D, and E. Part A of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§1395c *et seq.* Part A services are furnished to Medicare beneficiaries by "providers" of services, including the Hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. §1395cc, to furnish hospital services to Medicare beneficiaries.

20.     CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" ("MACs"), which are agents of the Secretary. Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. §1395h. The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.

21.     Part C of the Medicare program addresses how Medicare beneficiaries can obtain their Medicare benefits through a health plan, as opposed to under fee-for-service Medicare. These health plans are currently known as "Medicare Advantage Plans," but other names for

them have been used in the past.  For consistency, these plans are referred to herein as "Medicare Part C plans."  Part C plans are offered by private companies approved by Medicare.

22.     A Medicare beneficiary can elect to receive Medicare benefits *either* through the original fee-for-service program under Medicare Part A, *or* through enrollment in a health plan under Medicare Part C, but not both simultaneously.  *See* ¶30, *infra*.  Medicare beneficiaries that join Part C plans still have Medicare, but they get their coverage and payment for hospital services from the plan, and not fee-for-service Medicare.

## THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

23.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the hospital inpatient prospective payment system ("IPPS") to reimburse hospitals, including the Hospitals, for inpatient hospital operating costs.  Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals.  Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments.  One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment.  *See* 42 U.S.C. §1395ww(d)(5)(F).

## THE MEDICARE DSH ADJUSTMENT

24.     Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments.  42 U.S.C. §1395ww(d)(5)(F).  Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients.  These higher costs have been found to result from the generally poorer health of low-income patients.  The DSH adjustment

provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

25.     There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)).  The Hospitals' DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" ("DPP").  42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

26.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days").  Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of such patients.

27.     The first fraction, referred to as the "Medicare/SSI fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to benefits under SSI, a federal low-income supplement.   The Medicare/SSI fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) *were entitled to benefits under Part A of this subchapter* and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) *were entitled to benefits under Part A of this subchapte*r.

42 U.S.C. §1395ww(d)(5)(F)(vi)(I) (emphasis added).  The Medicare/SSI fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.   The terms

"Medicare" and "SSI," and "ratio," "fraction," "proxy" and "percentage" are all used interchangeably throughout various sources to describe the fraction set forth in 42 U.S.C. §1395ww(d)(5)(F)(vi)(I).  For consistency, the term "Medicare/SSI fraction" is used herein.

28.     The second fraction, referred to as the "Medicaid fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were *eligible* for medical assistance under a State plan approved under title XIX, but who were *not entitled to benefits under Part A of this title*, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added).  The Medicaid fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] Part A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

## MEDICARE PART C

29.     Section 4001 of the Balanced Budget Act of 1997 ("BBA"), Pub. Law No. 105-33, added a new Part C to Title XVIII of the Social Security Act to establish the Medicare+Choice program to allow Medicare beneficiaries to obtain their Medicare benefits through a private health plan, instead of through fee-for-service Medicare.  The Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. Law No. 108-173, replaced the Medicare+Choice program with the new Medicare Advantage program, also under Part C.  For consistency, all plans authorized under Part C are referred to herein as "Part C plans."

30.     A Medicare beneficiary can elect to receive Medicare benefits *either* through the original fee-for-service program under Medicare Part A, *or* through enrollment in a Part C plan,

but not both simultaneously.  42 U.S.C. §1395w-21(a)(1); 42 C.F.R. §422.50; *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through *either* the existing Medicare fee-for-service program *or* a Part C [Medicare Advantage] plan.") (emphasis added). In order to be eligible to enroll in a Part C plan, an individual must be entitled to benefits under Part A.  42 U.S.C. §1395w-21(a)(3)(A).  Once a Medicare beneficiary individual enrolls in a Part C plan, the beneficiary "is entitled to elect to receive benefits under [the Medicare statute] . . . through enrollment in a [Medicare Advantage] plan under this part [C]" and, thus, is no longer entitled to payment of benefits under Medicare Part A.  42 U.S.C. §1395w-21(a)(1)(B).

31.    The Secretary makes Part C payments to the Part C plan "instead of the amounts which (in the absence of the contract) would otherwise be payable under parts A and B of this subchapter for items and services furnished to the individual." 42 U.S.C. §1395w-21(i)(1); *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through either the existing Medicare fee-for-service program or a Part C plan.").  It is the responsibility of the Part C plan to pay the amount due to providers for the services provided to Medicare beneficiaries enrolled in the Part C plan.  Thus, payments for Part C enrollees are made under Part C, rather than under Parts A or B.  42 U.S.C. §1395w-21(a)(1)(B).  Accordingly, Medicare patients who elect to receive Medicare benefits through enrollment in a Part C plan are no longer "entitled to benefits under part A," because they are not entitled to have payment made under part A.  *See* 42 U.S.C. §426(c) (defining entitlement to benefits under Part A as "entitlement to have payment made under, and subject to the limitations in, part A") and 42 U.S.C. §1395d(a) (stating that the

benefits provided under Medicare Part A "consist of [an individual's] entitlement to have payment made on his behalf" for services covered under Part A).

## HOW THE SECRETARY HAS ACCOUNTED FOR PART C DAYS IN THE MEDICARE/SSI FRACTION AND THE MEDICAID FRACTION

32.     When a hospital provides inpatient services to a Part C plan enrollee, these inpatient days are referred to as "Part C days" for DSH purposes.  Prior to 2003, it was the Secretary's practice not to include Part C days in the Medicare/SSI fraction, although that practice was not explicitly addressed in the Secretary's notice and comment regulations.  *Allina Health Servs.*, 746 F.3d at 1106 (Before May 2003, "the Secretary treated Part C patients as *not* entitled to benefits under Part A.").

33.     Consistent with that long-standing practice, in FFY 2004 IPPS Proposed Rule, which CMS published in the Federal Register in May 2003, the Secretary "propos[ed] to *clarify*" that Part C days "*should not be included in the Medicare fraction*."  68 Fed. Reg. 27,154, 27,208 (May 19, 2003) (emphasis added).  In that proposed rule, CMS reasoned that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id*.  CMS also proposed to permit hospitals to count inpatient days for Medicaid-eligible Medicare Part C plan enrollees in the numerator of the Medicaid fraction. *Id*.

34.     The Secretary did not act on this proposal in the FFY 2004 IPPS Final Rule.  *See* 68 Fed. Reg. 45,346, 45,422 (August 1, 2003).  The Secretary also did not address it in the FFY 2005 IPPS Proposed Rule, which was published in the Federal Register in May 2004.  Despite not addressing the proposal in the FFY 2005 IPPS Proposed Rule, and in a complete reversal of the policy in the FFY 2004 IPPS Proposed Rule, in the FFY 2005 IPPS Final Rule, CMS "adopt[ed] a policy" to include Part C days in the Medicare/SSI fraction, and exclude these days

21

from the numerator of the Medicaid fraction, and stated that it was "revising" its regulations to reflect this policy effective October 1, 2004.  69 Fed. Reg. 48,916, 49,099 (August 11, 2004). The Secretary's sole explanation for this change in direction was that Part C plan enrollees "are still, in some sense, entitled to benefits under Part A." *Id.*  But contrary to the Secretary's assertion, CMS did not "revise" the DSH regulation at that time to include Part C days in the Medicare/SSI fraction.  Nor did the agency implement that new policy at that time.

35.      In Change Request 5647, Transmittal No. 1311 (Jul. 20, 2007) at 8, CMS stated that "[p]atients who are enrolled in Medicare Advantage . . . should also be included in the Medicare fraction."   With an implementation date of January 7, 2008, the change request directed that "hospitals . . . begin to submit 'no pay' bills to their Medicare contractor for the MA beneficiaries they treat, in order for these days to be *eventually* captured in the DSH . . . calculations." *Id.* at 1 (emphasis added).  CMS revised the Medicare Claims Processing Manual to state: "[H]ospitals may go back and submit claims with discharge dates on or after October 1, 2006 (FY 2007), *so that SSI data for FY 2007 and beyond will include MA [i.e., Medicare Advantage or Medicare Part C] patient days.*" *Id.* at 2 (emphasis added); *see also* Medicare Claims Processing Manual (CMS Pub. 100-04) Ch. 3 §20.3, (requiring hospitals to submit informational only bills to "ensure that these days are included in the SSI [fraction] for Fiscal Year 2007 and beyond").

36.      In the FFY 2008 IPPS Final Rule, which CMS published in the Federal Register in August 2007, the agency stated that it had "inadvertently" failed to revise the regulation in 2004 and was doing so at that time to conform to the alleged 2004 "policy change."  72 Fed. Reg. 47,130, 47,384 (August 22, 2007) (amending portions of the DSH regulation to include in the numerator and denominator of the Medicare/SSI fraction days relating to patients who are

"entitled to Medicare Part A *(or Medicare Advantage (Part C))*."  *Id.* at 47411 (amending §412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).  By revising the DSH regulation in the FFY 2008 IPPS Final Rule, without first explaining the rationale for doing so in the FFY 2008 IPPS Proposed Rule, the Secretary did not meet the notice and comment provisions of the APA.

37.    In the FFY 2014 IPPS Proposed Rule, which was published in the Federal Register in May 2013, CMS presented its proposal to "readopt" the 2004 rule (with the 2007 revisions), to attempt to satisfy the APA's notice and comment rulemaking requirements for FFY 2014 and subsequent FFYs.  78 Fed. Reg. 27,486, 27,578 (May 10, 2013).  CMS asserted in the FFY 2014 IPPS Final Rule that the agency was, indeed, "readopting" the 2004 rule (allegedly codified in 2007).  78 Fed. Reg. 50,496, 50,614 (August 19, 2013).

## LITIGATION ABOUT HOW THE SECRETARY HAS ACCOUNTED FOR PART C DAYS IN THE MEDICARE/SSI FRACTION AND THE MEDICAID FRACTION

38.    The Secretary's 2004 change in policy has been the source of several legal challenges.  In *Northeast Hospital Corporation v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011), a hospital appealed the application of the new policy of including Part C days in the Medicare/SSI fraction retroactively to the hospital's DSH payments for FFYs 1999–2002.  The D.C. Circuit held that CMS had changed its practice and policies concerning including Part C days in the Medicare/SSI fraction in 2004 and the 2004 policy could not be applied retroactively to periods before that date.  *Id.* at 17.

39.    In *Allina I*, which involved FFY 2007, the D.C. Circuit held that CMS had failed to follow the APA and the Medicare Act when attempting to adopt a regulation in 2004 that suggested Part C inpatient days will be (or should be) included in the Medicare/SSI fraction and excluded from the Medicaid fraction.  *Allina I*, however, left open the possibility that CMS could attempt to "repair" the identified deficiencies in the 2004 <u>rulemaking</u> process by implementing

the new policy through an <u>adjudicatory</u> process. *Allina I* was remanded to the Secretary for further proceedings.

40. On remand in *Allina I*, the December 2, 2015 final "Decision of the [CMS] Administrator" purported to explain why the 2004 rule change had been properly supported by the administrative record of the rulemaking and why, in any event, the "change" in CMS policy was not actually a substantive modification of policy, but rather a clarification of the agency's interpretation, which could be applied even in the absence of notice and comment rulemaking. *See Allina Health Servs., et al.*, *v. Sebelius*, No. 1:10-cv-01463-RMC, CMS Adm'r Dec. (D.D.C. Dec. 2, 2015). In response, the *Allina I* plaintiff-hospitals filed a new lawsuit in this Court to challenge this 2015 CMS Administrator's final decision.

41. Meanwhile, the *Allina* hospital plaintiff group had already filed a separate lawsuit in this Court, *Allina II*, to challenge the Secretary's application of the 2004 rule (already vacated by *Allina I*) to the hospitals' DSH payments for FFY 2012. The hospitals in *Allina II* contended that the Secretary lacked the authority to include Part C days in hospitals' Medicare/SSI fractions for FFY 2012 because of the substantive and procedural invalidity of the 2004 rule. The D.C. Circuit agreed, not only reiterating that the 2004 rule was invalid but also stating that "HHS violated the Medicare Act when it changed its reimbursement adjustment formula without providing notice and opportunity for comment." *Allina II*, 863 F.3d at 938. Significantly, the D.C. Circuit also suggested that the Secretary could not "repair" the deficiencies in the 2004 <u>rulemaking</u> process by implementing the new policy through an <u>adjudicatory</u> process, stating, contrary to the earlier decision in *Allina I,* that the Secretary "could not circumvent this requirement [to conduct notice and comment rulemaking] by claiming that it was acting by way of adjudication rather than rulemaking." *Id.* at 945. The D.C. Circuit also noted that, because its

24

prior ruling vacated the 2004 rule, "HHS can no longer rely on the 2004 interpretation." *Allina II*, 863 F.3d at 939.

42.     The Secretary petitioned for both panel rehearing and rehearing *en banc* in *Allina II*, both of which petitions were denied.  On April 27, 2018, the Secretary filed a petition for certiorari to the Supreme Court of the United States, and the Supreme Court granted the Secretary's petition on September 27, 2018.  On June 3, 2019, the Supreme Court affirmed the decision of the D.C. Circuit in *Allina II.  Azar v. Allina Health Servs*., 139 S. Ct. 1804 (2019). On remand from the Supreme Court, this Court entered judgment in favor of the plaintiffs, vacated the Medicare/SSI fractions to be used in calculating the plaintiffs' DSH payments, and remanded the case to HHS for further proceedings consistent with the law established by the *Allina* case.  *See* Order, *Allina Health Servs. v. Azar*, No. 14-cv-1415 (TJK) (D.D.C. Sept. 4, 2019), ECF No. 58 at 2.

## THE MEDICARE APPEALS PROCESS

43.     Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year.

44.     If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Provider Reimbursement Review Board ("PRRB" or "Board") by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. §1395oo.

45.     The decision of the PRRB constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.

46.     The PRRB lacks the authority to adjudicate the validity of the Secretary's regulations and CMS Rulings.  42 C.F.R. §405.1867.  Thus, when a hospital is entitled to a PRRB hearing, the hospital may request that the PRRB determine whether it has the authority to decide the question of law or regulations relevant to the appeal.  42 U.S.C. §1395oo(f)(l).  If the PRRB determines that the legal issues raised are outside the scope of its own authority, it must certify the case for "expedited judicial review" or "EJR."  *Id.*  In that event, the hospital has exhausted its administrative remedies, the Secretary's determination is final, and the hospital may commence a civil action for judicial review of the final determination of the Secretary.  *See* 42 U.S.C. §1395oo(f)(1); 42 C.F.R. §405.1842. An EJR determination is not subject to review by the Secretary or the CMS Administrator but, rather, allows the hospital to proceed directly to court.

47.     A hospital may obtain judicial review by filing suit within 60 days of receipt of the EJR determination in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).  A hospital may also seek judicial review if the PRRB fails to timely render an EJR determination.  *Id.*   In any such action, the Secretary is the proper defendant.  *See* 42 C.F.R. §421.5(b).  Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. §1395oo(f).

48.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

49.     Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review after the PRRB orders EJR "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706(2)(A).  Furthermore, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §706(2)(C).

50.     Additionally, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…without observance of procedure required by law." 5 U.S.C. §706(2)(D).  The APA dictates rulemaking procedural requirements, specifically the requirement that the agency provides notice of proposed rulemaking, that the agency affords interested parties an opportunity to comment on the proposed rulemaking, and that the agency considers the relevant matters presented.  5 U.S.C. §553.

## PROCEDURAL BACKGROUND

51.     This action arises from 30 PRRB common issue related party ("CIRP") group appeals, 13 optional group appeals, and 5 individual appeals challenging the Hospitals' Medicare DSH payments for Hospitals' fiscal years 2006 through 2013, on the grounds that (a) the Medicare/SSI fractions that CMS unlawfully used to calculate those payments improperly

included Part C days in the numerator and/or denominator, and (b) the Medicaid fractions that CMS unlawfully used to calculate those payments improperly excluded Part C days from the numerator.   The Hospitals appealed this legal question by filing timely, and thus having jurisdictionally valid PRRB appeals, in accordance with 42 U.S.C. §1395oo.

52.      In letters dated March 4, 2020, March 9, 2020, March 12, 2020, March 18, 2020, April 3, 2020, and April 6, 2020, the PRRB decided on either (1) its own motion for expedited judicial review or (2) the Hospitals' request for expedited judicial review, that although the PRRB had jurisdiction over all of the Hospitals' FYs 2006 through 2013 PRRB appeals, the PRRB lacked the authority to review the validity of the Secretary's regulation governing the use of Part C days in the Hospitals' Medicare/SSI fractions and/or exclusion of Part C days in the numerator of the Hospitals' Medicaid fractions when calculating the Hospitals' fiscal years 2006 through 2013 DSH payments at issue (attached hereto as Exhibit A).[2]  This action is timely-filed under 42 U.S.C. §1395oo(f).

## ASSERTED VIOLATIONS

53.      The Medicare statute provides for EJR of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA. 42 U.S.C. §1395oo(f)(l).

54.      An agency's rule cannot stand if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A) (incorporated by reference in 42 U.S.C. §1395oo(f)(1)). The APA dictates rulemaking procedural requirements, including that the agency (a) provide notice of proposed rulemaking, (b) afford interested parties an opportunity to comment on the proposed rulemaking, and (c) consider the relevant matters presented.  5 U.S.C.

---

[2] The PRRB's EJR determinations, attached hereto as Exhibit A, include information regarding whether the Hospitals' appeals challenged the Hospitals' Medicare/SSI fractions, Medicaid fractions, or both fractions.

§553.  Under 42 U.S.C. §1395hh(a)(1), the Secretary, delegating his authority through CMS, is required to "prescribe such regulations as may be necessary to carry out the administration" of the Medicare program.  Further:

> No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this title shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1).

42 U.S.C. §1395hh(a)(2).  A regulation and policy not implemented in accordance with the APA is not effective to the extent it "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits" under Medicare.  *Id*.

55.     When an agency "promulgate[s] final rules that differ from the proposed rule," an agency's rule is only valid if it was a "logical outgrowth of a proposed rule," which does not "extend to a final rule that is a brand new rule." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005); *Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012) ("This rule ensures that regulated parties have an opportunity to comment on new regulations").  In addition, the Medicare Act specifies that where the final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . ., such provision shall be treated as a proposed regulation and shall not take effect." 42 U.S.C. §1395hh(a)(4).  "A final rule is a logical outgrowth if affected parties should have anticipated that the relevant modification was possible." *Allina I,* 746 F.3d at 1107.

56.     The 2004 policy change to include Part C days for purposes of calculating the Medicare/SSI fraction, and subsequent 2007 technical correction, were not the "logical

outgrowth" of the 2003 proposed rule, and therefore, do not constitute valid rulemaking. In fact, the 2004 policy was the exact opposite of what was proposed in 2003. The D.C. Circuit held that it was CMS's practice, prior to the 2004 policy change, not to include Part C patient days in the Medicare/SSI fraction. *Northeast Hosp.*, 657 F.3d at 16-17. The D.C. Circuit subsequently held that affected hospitals could not have reasonably anticipated that a proposed "clarification" of the then-existing policy of not including Part C days in the Medicare/SSI fraction would have meant that CMS was considering promulgating the exact opposite policy. *Allina I*, 746 F.3d at 1108. As such, the Court found that the 2004 policy change was "not a logical outgrowth of the proposed rule," and was therefore invalid. *Id.* at 1109. Consequently, the 2004 policy change and subsequent 2007 regulation amendment are invalid, and CMS should not have (a) included Part C Days in the Medicare/SSI fraction and (b) excluded Part C Days from the numerator of the Medicaid fraction when calculating the Hospitals' DSH adjustments for the fiscal periods at issue herein.

57.    Moreover, an interpretation that treats Part C days as Part A days for purposes of the Hospitals' DSH calculations for periods prior to October 1, 2013, is invalid because *vacatur* of the 2004 rule adopting a policy change restored the previously-governing policy until it is changed by rulemaking that could validly be applied to the fiscal periods at issue herein, which has not occurred. *See* 5 U.S.C. §553(c); 42 U.S.C. §1395hh(a)(2); *Croplife Am. v. EPA*, 329 F.3d 876, 879 (D.C. Cir. 2003) (vacating rule and holding that "[a]s a consequence, the agency's previous practice ... is reinstated and remains in effect unless and until it is replaced by a lawfully promulgated regulation"). The Secretary has attempted to engage in a valid rulemaking applicable on a prospective basis to FFYs 2014 and later (*i.e.*, beginning October 1, 2013), 78

30

Fed. Reg. at 50,619, but has engaged in no such rulemaking *at all* for the period from the vacated 2004 rulemaking through FFY 2013.

58.     Because the now-reinstated pre-2004 regulation and the Secretary's definitive interpretation of it both provide that Part C days must be excluded from the Medicare/SSI fraction and included in the Medicaid fraction, the agency is procedurally barred by the APA from altering that policy without going through notice-and-comment rulemaking.  *See* 5 U.S.C. §551(5) ("'rule making' means agency process for … amending … a rule"); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (regulation's meaning as reflected in the "regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation" governs absent a valid change through rulemaking).

59.     Under the APA and Medicare Act, the Secretary is prohibited from taking actions and making findings and conclusions that are arbitrary and capricious.  Conduct is considered arbitrary and capricious when it is not explained, or when it is not rationally explained.  5 U.S.C. §706(2)(A).  CMS's interpretation of a statute is reviewed under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984).  If the statute is ambiguous, the agency's interpretation receives deference only if it falls within "the bounds of reasonableness," *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006). An agency must acknowledge and explain departures from prior policy, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), be internally consistent, *Air Line Pilots Ass'n v. FAA*, 3 F.3d 449, 453 (D.C. Cir. 1993), and show "how [the] agency's interpretation serves the statute's objectives," *Northpoint Tech. Ltd. v. FCC*, 412 F.3d 145, 151 (D.C. Cir. 2005).  The statute is not ambiguous and the 2004 policy is invalid because it violates the plain language of the statute.  Moreover, if the statute is found to be ambiguous, the policy is arbitrary and capricious, and thus invalid, under *Chevron* "step two."

60.     Prior to the 2004 policy change, CMS consistently interpreted "entitlement" to Part A to mean days paid by Part A, and as such, excluded Part C days from the Medicare/SSI fraction.  For example, in 1990, the CMS took the position that "entitle[ment] to benefits under part A" ceases when "[e]ntitlement to payment under part A ceases." 55 Fed. Reg. 35,990, 35,996 (Sept. 4, 1990).  Similarly, in 1996, CMS applied this same interpretation of "entitled" in ruling that inpatient hospital days that were billed to and paid for by Medicaid, after a patient had exhausted Medicare part A benefits for inpatient hospital services, should be counted in the numerator of the Medicaid fraction. *See Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co*., CMS Adm'r Dec., 1996 WL 887683, reprinted in Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996).

61.     After Part C was added by the BBA in 1997, the CMS did not publish any additional rules or explicit guidance on the counting of these patient days in the DSH adjustment calculation until 2003.  In 2003, CMS explained that Part C days should *not* be counted in the Medicare/SSI fraction, should be counted in the denominator of the Medicaid fraction, and would also be counted in the numerator of that fraction if the patient was also eligible for Medicaid. 68 Fed. Reg. at 27,208. CMS did not propose any change in the DSH regulation in this regard, and did not state that this clarification represented any departure or change from the CMS's prior interpretation of the DSH statute and regulation since the Part C program was enacted in 1997.  Then, in the preamble to the 2004 rulemaking final rule, and without notice or explanation, CMS stated that it was "adopting a policy" and "revising our regulation" to begin including Part C days in the Medicare/SSI fraction, clearly indicating that this was a departure from prior practice.

62.     The D.C. Circuit in *Allina I* found that the 2004 policy was not a logical outgrowth of the proposed rule.  *Allina I*, 746 F.3d at 1109.  CMS's failure to adequately explain its change in policy renders it unreasonable, arbitrary and capricious, and the policy cannot be given effect by the agency.  CMS has never adequately explained its departure from that prior interpretation of the DSH statute.  When CMS first announced that it was "adopting a policy" to begin counting Part C patient days in the Medicare/SSI fraction, CMS only stated that Part C enrollees are "in some sense" entitled to benefits under Part A but did not explain its reasoning. *See* 69 Fed. Reg. at 49,099.  Because of CMS's failure to adequately explain its change in policy, the interpretation is arbitrary, capricious, unreasonable, and should not have been applied by CMS to the Hospitals' DSH payments for the fiscal periods at issue.

63.     The D.C. Circuit in *Allina II* went even further, finding that changing the reimbursement adjustment formula without providing notice and opportunity for comment violated the Medicare Act.  *Allina II*, 863 F.3d at 938.  Contrary to the earlier decision in *Allina I,* the D.C. Circuit in *Allina II* stated that the Secretary "could not circumvent this requirement [to conduct notice and comment rulemaking] by claiming that it was acting by way of adjudication rather than rulemaking," suggesting that the Secretary could not "repair" the deficiencies in the 2004 <u>rulemaking</u> process by implementing the new policy through an <u>adjudicatory</u> process.  *Id.* at 945.   The Supreme Court subsequently affirmed the D.C. Circuit's decision in *Allina II*.  *See Azar v. Allina Health Servs*., 139 S. Ct. 1804 (2019).

## **CAUSES OF ACTION**

## **COUNT I**

### **Violation of the APA and the Medicare Act**
**(The Hospitals' DSH payments at issue are unlawful and should be set aside because the Secretary calculated them using an invalid policy.)**

64.     The Hospitals hereby incorporate by reference paragraphs 1 through 63 herein.

65.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §706(2).  The Hospitals' DSH payments at issue are unlawful and should be set aside because they violate the plain meaning of the DSH Statute, and otherwise violate the Medicare Act, in that they were calculated by including Part C days in the Medicare/SSI fractions and excluding Part C days from the numerator of the Medicaid fractions, even though Part C enrollees are not entitled to benefits under Part A.

## COUNT II

### Violation of the APA and the Medicare Act
### (The Hospitals' DSH Payments at issue are Arbitrary and Capricious Because the Secretary Failed to Adequately Explain the Reasoning for Including Part C Days in the Medicare/SSI Fractions.)

66.     The Hospitals hereby incorporate by reference paragraphs 1 through 65 herein.

67.     Conduct by an agency is considered arbitrary and capricious when it is not explained, or when it is not rationally explained.  The sole justification given by the Secretary in 2004 for changing policy and including Part C days in the Medicare/SSI fraction was that Part C plan enrollees "are still, in some sense, entitled to benefits under Part A."  69 Fed. Reg. 48,916, 49,099 (August 11, 2004).  However, the Secretary did not explain in what "sense" Part C enrollees were "entitled" to benefits under Medicare Part A.  More importantly, the Secretary did not adequately explain the change from the prior policy to exclude Part C days from the Medicare/SSI fraction.

## COUNT III

### Violation of the APA and the Medicare Act
### (The Secretary Exceeded Statutory Authority Because the Policy Used for the Hospitals' DSH Payments at issue were Not Adopted as a Regulation or were otherwise procedurally invalid.)

68.     The Hospitals hereby incorporate by reference paragraphs 1 through 67 herein.

34

69.     The Hospitals' DSH payments at issue, which were calculated with Part C days included the Medicare/SSI fractions and excluded from the numerator of the Medicaid fractions, also should be set aside because the Secretary did not adopt this interpretation through notice-and-comment rulemaking, as required by the APA and the Medicare Act (for at least the fiscal periods at issue herein).

## COUNT IV

### Violation of the APA and the Medicare Act
### (The Secretary Exceeded Statutory and Other Authority Because the Policy Used for the Hospitals' DSH Payments at issue was Vacated

70.     The Hospitals hereby incorporate by reference paragraphs 1 through 69 herein.

71.     The Hospitals' DSH payments at issue calculated with Part C days in the Medicare/SSI fractions also should be set aside because the Secretary's interpretation that treats Part C days as Part A days for purposes of the Hospitals' DSH calculations is invalid in light of the vacating of the 2004 rule adopting a policy change, which restored the previously-governing policy to exclude Part C days from the Medicare/SSI fractions.

## COUNT V

### Violation of the APA
### (Payment is Unsupported by the Evidence in the Record)

72.     The Hospitals hereby incorporate by reference paragraphs 1 through 71 herein.

73.     The Hospitals' DSH payments at issue are unlawful and should be set aside because they are unsupported by substantial evidence in the record.  In 2013, CMS purportedly "readopted" the policy to include Part C days in the Medicare/SSI fraction as part of the FFY 2014 IPPS Final Rule.  78 Fed. Reg. 50,496, 50,614 (August 19, 2013).  The agency's 2013 assertion lacks a factual foundation because neither the changes that CMS made to the DSH

policy in the preambulatory text in 2004, nor codified revisions to the regulatory text in 2007 had been "adopted" using notice and comment rulemaking.

## COUNT VI

### Mandamus

74.     The Hospitals hereby incorporate by reference paragraphs 1 through 73 herein.

75.     The Secretary has the non-discretionary duty to reimburse the Hospitals fully at the amounts to which they are entitled under the law.  The Hospitals are entitled to a writ of mandamus under 28 U.S.C. §1361, directing the Secretary to recalculate the Hospitals' DSH payments for the FYs at issue after excluding Part C days from the Medicare/SSI fractions and including Part C days in the numerator of the Medicaid fractions.

## COUNT VIII

### All Writs Act

76.     The Hospitals hereby incorporate by reference paragraphs 1 through 75 herein.

77.     The Secretary has violated the Medicare Act and APA by calculating the Hospitals' DSH payments at issue after including Part C days in the Medicare/SSI fractions and excluding Part C days from the numerator of the Medicaid fractions.  Under the All Writs Act, 28 U.S.C. §1651, and other authority, the Hospitals are entitled to issuance of an order requiring the Secretary to recalculate the Hospitals' DSH payments at issue after excluding Part C days from the Medicare/SSI fractions and including Part C days in the numerator of the Medicaid fractions.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, the Hospitals request:

1.      An order declaring invalid and enjoining the Secretary from applying any policy of treating Medicare Part C days as Medicare Part A days for purposes of calculating the Hospitals' Medicare DSH payments for the fiscal periods at issue herein;

2.      An order directing the Secretary to recalculate the Hospitals' DSH payments for the fiscal periods at issue herein consistent with that order and to make prompt payment of any additional amounts due the Hospitals plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2) and/or 42 U.S.C. §1395g(d);

3.      Costs of suit incurred by Hospitals, including reasonable attorneys' fees; and

4.      Such other and relief as the Court deems just and proper.

Dated:  April 27, 2020                          Respectfully submitted,

                                    _____/s/ Kelly A. Carroll_____

Laurence D. Getzoff                         Kelly A. Carroll (DC Bar No. 1018485)
HOOPER LUNDY & BOOKMAN, P.C.    HOOPER LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600          401 9th Street, NW, Suite 550
Los Angeles, CA  90067-2517                 Washington, DC 20004
Tel:  (310) 551-8111                        Tel.: (202) 580-7712
Fax:  (310) 551-8181                        Fax: (202) 580-7719
E-mail: lgetzoff@health-law.com             E-mail: kcarroll@health-law.com


*Counsel for Plaintiffs*